**SIGNED this 31st day of January, 2013**

Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

In re

     CHARLES DWAYNE CARDIN,

          Debtor.

ICE HOUSE AMERICA, LLC,

     Plaintiff,

vs.

CHARLES DWAYNE CARDIN,

     Defendant.

No. 11-52077
Chapter 11

Adv. Pro. No. 11-5077

### M E M O R A N D U M

Appearances:

Michael S. Kelley, Esq.　　　　　William E. Maddox, Jr., Esq.　　　　.
550 Main Street, 4th Floor　　　　Post Office Box 31287
Knoxville, Tennessee 37902　　　　Knoxville, Tennessee 37930
*Attorney for Plaintiff*　　　　　*Attorney for Defendant*

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.**  In this adversary proceeding, the plaintiff Ice House America, LLC ("IHA") seeks a determination that the state court judgment it holds against the defendant Charles Dwayne Cardin ("Cardin") in the amount of $800,000 for compensatory damages and $504,397.91 for attorney fees and costs is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).  Presently before the court is Cardin's motion for summary judgment.  For the reasons set forth below, Cardin's motion for summary judgment will be granted as to § 523(a)(2)(A) and (a)(4) of the Bankruptcy Code, but denied as to § 523(a)(6).  This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(I).

I.

On September 7, 2011, Cardin filed a voluntary petition for chapter 11 bankruptcy relief.  On December 16, 2011, IHA initiated the present adversary proceeding.  According to the complaint, IHA  is a manufacturer of free standing ice vending machines ("ice houses") that can be calibrated to dispense bagged ice to consumers.  In 2004, IHA entered into a distributorship agreement with Tennessee Ice House, Inc. ("TIH"), appointing TIH the exclusive distributor of IHA's ice houses in Tennessee.  Cardin is the owner and president of TIH.  In 2008, IHA sued TIH and Cardin in Florida state court, alleging as to both defendants breach of contract, breach of the duty of good faith and fair dealing, and breach of fiduciary duty.[1]  Additionally, IHA asserted claims against Cardin alone for tortious interference with contract, tortious interference with customer relationships, and violation of the Lanham Act, 15 U.S.C. § 1125(a).  TIH counterclaimed against IHA, asserting many of the same claims plus a claim for breach of an incentive agreement.  After a 10-day trial, the jury found in favor of IHA on all of its claims, with the exception of the Lanham Act claim, and set damages.  The jury also rejected all of TIH's counterclaims except for its breach of an incentive agreement claim.  Based on the jury verdict, the state court offset the damage awards and entered a judgment on August 13, 2009, in favor of IHA in the amount of $800,000 against TIH

_____

[1] A copy of the state court complaint has not been tendered to this court.  This list of the various causes of action claimed by IHA against Cardin and TIH in state court was taken from the state court jury instructions and verdict.

and Cardin, jointly and severally.[2]  Subsequently, on November 24, 2009, the state court entered an additional judgment against TIH and Cardin in the amount of $504,397.91 for attorney fees of $451,550.68 and costs of $52,847.23.  That same day, the state court also entered an order in IHA's favor granting declaratory and injunctive relief against TIH and Cardin.  Both orders set forth certain findings of fact and conclusions of law. There is no indication in the record that the judgments were appealed.  More importantly, the parties agree that the state court judgments are valid, final and enforceable judgments.

In this adversary proceeding, IHA asserts that the monetary judgments awarded by the Florida state court are excepted from Cardin's discharge pursuant to § 523(a)(2)(A) because they are debts for money, property, or services obtained by false pretense, false representation, or actual fraud;  the judgments are nondischargeable under § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity; and the judgments are excepted under § 523(a)(6) for willful and malicious injury to property.  Cardin denies that the judgments fall within these exceptions to discharge.

On November 9, 2012, Cardin filed the motion for summary judgment that is presently before this court.  In support of his motion, Cardin submits the verdict form and the jury instructions from the state court action.  According to Cardin, IHA's nondischargeability claims are deficient because they are based exclusively on the state court judgments that fail to establish the required elements of the three cited Bankruptcy Code sections.  Regarding IHA's § 523(a)(2)(A) claim, Cardin asserts that the issue of fraud, false pretense, or false representation was never presented to the jury and that its verdict was not based on any of these grounds.  With respect to IHA's § 523(a)(4) ground, Cardin argues that IHA has failed to allege or offer any evidence of an express or technical trust, which is an essential component of this Code section.  Lastly, as to § 523(a)(6), Cardin maintains that there is no evidence establishing intentional acts with the intent to cause harm as required by this provision.  Cardin concludes that he is entitled to summary judgment as a matter

---

[2]As set forth on the jury verdict form, the amount of damages awarded for each of IHA's claims against Cardin was $900,000, with the exception of the tortious interference with customer relationships claim for which the jury fixed damages at $300,000.  In setting the total compensatory damages award at $800,000, the state court reduced the $900,000 in damages by the $100,000 counterclaim award.

3

of law because the state court judgments do not establish the required elements of the exceptions to discharge provisions relied upon by IHA and because IHA otherwise fails to allege facts supporting its nondischargeability claims.

In response to Cardin's motion, IHA argues that summary judgment is not appropriate procedurally because Cardin has failed to present any affidavits, discovery responses, or other materials that demonstrate that there is no dispute as to any material fact.  IHA asserts that although Cardin has tendered copies of the state court jury verdict form and jury instructions, he has failed to articulate other than in a conclusory fashion how they support his summary judgment motion. Alternatively, IHA maintains that Cardin's motion should be denied on a substantive basis because the jury verdict, more specifically the judgments for tortious interference with contract and with customer relationships, along with the findings of the trial judge, establish the elements of nondischargeability under § 523(a)(6).  IHA contends that given the judgment on these claims, Cardin is collaterally estopped from denying the nondischargeability of the judgments against him. In support of this contention, IHA  has submitted certified copies of the jury verdict and of the final judgments entered by the state court, including the state court orders granting declaratory and injunctive relief and taxing fees and costs.

As to IHA's other two bases for nondischargeability, § 523(a)(2)(A) and § 523(a)(4), IHA argues that the findings of fact by the Florida state court readily demonstrate that Cardin engaged in a fraudulent scheme, but concedes that the state court judgment fails to establish all of the required elements of nondischargeability under § 523(a)(2)(A), namely justifiable reliance and loss proximately caused by the reliance.  *See Rembert v. AT&T Universal Card Servs., Inc*., 141 F.3d 277, 280-81 (6th Cir. 1998).  IHA similarly agrees that controlling Sixth Circuit authority requires a preexisting express or technical trust for a finding of nondischargeability under § 523(a)(4), and concedes that there was no finding of either in the Florida action.

II.

Federal Rule of Civil Procedure 56(a)[3] provides that "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought" and that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The initial burden to demonstrate the absence of a genuine dispute of material fact rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Upon making such a showing, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine dispute of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In the alternative, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).[4]

---

[3] Federal Rule of Bankruptcy Procedure 7056 incorporates Rule 56 for adversary proceedings.

[4] While Rule 56(c)(1) "addresses the ways to support an assertion that a fact can or cannot be genuinely disputed[,] [i]t does not address the form for providing the required support." Fed. R. Civ. P. 56(c)(1) (2010 advisory committee comments). As to the form, Rule 7056-1 of this court's local rules works in tandem with Rule 56(c) by requiring that every motion for summary judgment "be accompanied by a statement of material facts which the movant contends are undisputed . . . [,] supported by specific citation to material allowed by Fed. R. Civ. P. 56(c) that establishes the fact." *See* E.D. Tenn. LBR 7056-1(a). The nonmovant must respond to the movant's statement by "(1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of summary judgment only; or (3) stating that the fact is disputed as demonstrated by specific citation to material allowed by Fed. R. Civ. P. 56(c)." E.D. Tenn. LBR 7056-1(b). A respondent may also file "a statement of additional material facts that the respondent contends are undisputed and require the denial of the motion," which statement must be supported by and responded to in the same manner as the original statement. E.D. Tenn. LBR 7056-1(c).

When deciding a motion for summary judgment, the court may not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine dispute for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). The facts and all resulting inferences are viewed in a light most favorable to the nonmovant, and the court decides whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Summary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553, 119 S. Ct. 1545 (1999)). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

III.

Before moving to the substantive bases of Cardin's motion for summary judgment, the court will briefly address IHA's argument that summary judgment is inappropriate because Cardin "has not filed any affidavits, discovery responses, or other materials in support of his motion for summary judgment but has merely attached a copy of the jury verdict form and jury instructions." Cardin attached both of these documents as exhibits to his answer, which made them a part of the record. *See* Fed. R. Civ. P. 10(c), incorporated by Fed. R. Bankr. P. 7010 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Massey v. Ojanitt*, No. 3-11-cv-477, 2012 WL 2992129, *4-5 (W.D.N.C. July 20, 2012) (attachments to answer consisting of documents from other court proceeding constitute written instruments); *cf. Copeland v. Aerisyn, LLC*, 1:10-cv-78, 2011 WL 2181497, *1-2 (E.D. Tenn. June 3, 2011) (granting motion to strike deposition transcripts and notes from third parties attached to complaint because they were "extraneous or evidentiary material" and not "written instruments"). The 2010 amendments to Rule 56 "eliminated the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated." *Forward Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, *2 (W.D. Mich. Oct. 31, 2011). Now, if an opposing party believes that the materials identified in the record by the moving party in support of a summary judgment motion "cannot be

presented in a form that would be admissible in evidence," that party must file an objection. *Id.* (quoting Fed. R. Civ. P. 56(c)(2)). "Significantly, the objection contemplated by the amended Rule is not that the material 'has not' been submitted in admissible form, but that it 'cannot' be." *Id*. In the present case, IHA does not contend that the jury verdict form and jury instructions cannot be presented in a form that would be admissible in evidence.[5] Accordingly, IHA's procedural objection to Cardin's summary judgment motion is without merit.

Having disposed of the procedural objection to the motion, the court next turns to IHA's two claims for nondischargeability under § 523(a)(2)(A) and § 523(a)(4) that it has essentially conceded to Cardin. As to the former provision, the Sixth Circuit Court of Appeals has explained that in order to except a debt from discharge under this section, a creditor must prove the following elements: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *In re Rembert*, 141 F.3d at 280-81 (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993)). In the case at hand, other than the general claim that the judgment debts are nondischargeable under § 523(a)(2)(A), there is no allegation of fraud in the complaint, nor are there any allegations of specific facts that would support a finding of each of the four *Rembert* elements. Moreover, it does not appear that fraud was a claim asserted in the state court action, other than in the context of the Lanham Act, a claim on which Cardin prevailed. With respect to the five claims on which IHA did prevail against Cardin in the state court action, i.e., breach of contract, breach of the duty of good faith and fair dealing, breach of fiduciary duty, tortious interference with contract, and tortious interference with customer relationships, none of these claims is analogous to fraud or provide all of § 523(a)(2)(A)'s essential components. In the November 24, 2009 order awarding fees and costs, the state court did recite in one of its findings that Cardin and TIH "'badmouthed' IHA, IHA's products, IHA's services and IHA's officers by

---

[5] It appears certain to the court that certified copies of the jury verdict form and jury instructions from the state court would be self-authenticating and therefore admissible under Federal Rule of Evidence 902(4). Further, a certified copy of the verdict form is attached to the affidavit of IHA's counsel submitted in opposition to the motion for summary judgment.

making false and misleading statements that were intended to convince parties to stop doing business with IHA or reduce their amount of business with IHA." While this finding would supply the material misrepresentation component of § 523(a)(2)(A), there is no indication that Cardin made the false statements to obtain money, property, service or credit from IHA, that IHA relied on these misrepresentations, and that its reliance was the proximate cause of IHA's loss. In any event, IHA admits that the judgments do not support the last two *Rembert* elements and, critically, that "it does not have evidence to establish [these] element[s] of the *Rembert* standard." Accordingly, Cardin is entitled to summary judgment on IHA's § 523(a)(2)(A) claim.

Turning to the § 523(a)(4) claim, IHA alleges in its complaint that Cardin breached his fiduciary duty to IHA, that the Florida jury found for IHA on its breach of fiduciary duty claim, and that the damages awarded for this claim are nondischargeable under bankruptcy law because it is a debt for fraud or defalcation while acting in a fiduciary capacity. On several occasions, the Sixth Circuit Court of Appeals has explained that "fiduciary capacity" in § 523(a)(4) is construed more narrowly than in other contexts and that the phrase "turn[s] on the existence of a pre-existing express or technical trust whose res encompasses the property at issue." *See, e.g., Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005). IHA acknowledges the Sixth Circuit's rulings in this area. While it disagrees with the court of appeals' interpretation of the law, IHA admits that "there was no finding of either an express or technical trust in the Florida action" and that "this court is bound to follow binding precedent from a superior court." Accordingly, Cardin is entitled to summary judgment regarding IHA's § 523(a)(4) claim.

The remaining basis for nondischargeability asserted by IHA is § 523(a)(6). Under this provision, a debt is nondischargeable when it is the result of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). As to the willfulness component, the Supreme Court has explained:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. . . . Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A cmt. a (1964). (emphasis added).

8

*Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998).  After the Supreme Court's decision in *Geiger*, the Sixth Circuit concluded:

> The Court's citation to the Restatement's definition of "intentional torts" underscores the close relationship between the Restatement's definition of those torts and the definition of "willful and malicious injury."  The Restatement defines intentional torts as those motivated by a desire to inflict injury or those substantially certain to result in injury.  Although the Supreme Court identified a logical association between intentional torts and the requirements of § 523(a)(6), it neither expressly adopted nor quoted that portion of the Restatement discussing "substantially certain" consequences.  Nonetheless, from the Court's language and analysis in *Geiger*, we now hold that unless "the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it," Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

*Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (internal footnote omitted).  As to the requirement of a "malicious" injury, the Sixth Circuit has stated that "'[m]alicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm."  *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted).

In the present case, IHA asserts that its state court judgments for tortious interference with contract and tortious interference with customer relationships establish the elements of nondischargeability under § 523(a)(6).  Consequently, argues IHA, Cardin is collaterally estopped from denying the nondischargeability of these judgments against him.  "The doctrine of collateral estoppel 'precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'"  *In re Markowitz,* 190 F.3d at 461 (quoting *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992)).  As explained by the Sixth Circuit, "that Congress intended the bankruptcy court to determine the final result dischargeability or not does not require the bankruptcy court to redetermine all the underlying facts."  *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981).  Bankruptcy courts should apply collateral estoppel when "(1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issue, and (2) the issue was fully and fairly litigated in state court."  *In re Markowitz*, 190 F.3d at 461.

9

Because the judgments in the case at hand were entered by a Florida state court, Florida's law on collateral estoppel applies. Under Florida law, a party asserting collateral estoppel must satisfy four requirements: "(1) the parties are identical with those from the prior case, (2) the issues are identical, (3) there was a full and fair opportunity to litigate the issues and they were actually litigated, and (4) those issues were necessary to the prior adjudication." *Agripost, LLC v. Miami-Dade Cnty.*, 525 F.3d 1049, 1055 (11th Cir. 2008) (citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So.2d 1216, 1235 (Fla. 2006)).[6]

Although Cardin has not responded directly to IHA's assertion that collateral estoppel applies, there would appear to be no dispute that two of the four requirements outlined above are satisfied in this proceeding. Both IHA and Cardin were parties to the state court action, and a ten-day jury trial suggests that there was a full and, presumably fair, litigation of the issues. Additionally, it appears that the state court jury's determination of the issues of tortious interference with contract and tortious interference with business relationships were necessary to the final judgment, since the jury reached a verdict in favor of IHA and against Cardin on these specific claims. *Cf. Davis v. State*, 645 So.2d 66, 67 (Fla. 4th Dist Ct. App. 1994) (collateral estoppel does not apply if the verdict could be grounded upon an issue other than that which is sought to be foreclosed from consideration).

These conclusions lead to the remaining requirement for application of collateral estoppel, whether the state court issues of tortious interference with contract and tortious interference with business relationships are identical to, and establish the elements for nondischargeability under

---

[6] Earlier articulations of the standard add the requirement that the standard of proof in the prior proceeding must have been at least as stringent as the standard of proof in the later case. *See St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993). Under Florida law, the burden of proof for the state court action was "greater weight of evidence," Fla. Civ. Jury Inst. 408.3, "a term of art used interchangeably with 'preponderance of the evidence' by the Florida Supreme Court." *In re St. Laurent*, 991 F.2d at 677. Because the burden of proof in this nondischargeability action "is the ordinary preponderance-of-the-evidence standard," *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654 (1991), the standard of proof in both proceedings is the same.

§ 523(a)(6).  While the courts considering this issue have disagreed,[7] it does not appear that a reported decision regarding a Florida state court judgment on this issue exists.  Accordingly, this court must examine the elements of the claims for tortious interference with a contract and with business relationships under Florida law and compare them with § 523(a)(6)'s essential components as defined by the Sixth Circuit in *Markowitz*, 190 F.3d at 464.  If the former establishes the latter, collateral estoppel will preclude relitigation of IHA's nondischargeability claim.

Under Florida law, the elements of the tort of interference with contract are: "(a) the existence of a contract; (b) the defendant's knowledge of the contract; (c) the defendant's intentional

---

[7] Of these decisions, some turn on the elements of the tort of interference under state law, of which there is some variation, while others cannot be reconciled.  *See Nat'l Sign & Signal v. Livingston*, 422 B.R. 645, 657 (W.D. Mich. 2009) (Michigan judgment against debtor for tortious interference with employer's business relationships constituted a willful and malicious injury under § 523(a)(6)); *The Spring Works, Inc v. Sarff (In re Sarff),* 242 B.R. 620, 629 (B.A.P. 6th. Cir. 2000) (affirming bankruptcy court's ruling that Ohio judgment for intentional interference with business relations and misappropriation of trade secrets established § 523(a)(6) as a matter of law); *Corn v. Marks (In re Marks)*, 192 B.R. 379, 385 (E.D. Pa. 1996) (Pennsylvania judgment for tortious intentional interference with an economic opportunity given collateral estoppel effect for purposes of § 523(a)(6)); *Beard Research, Inc. v. Kates (In re Kates)*, No. 11-0789, 2012 WL 6584994, *18 (Bankr. E.D. Pa. January 9, 2013) (tortious interference judgment under Pennsylvania law given preclusive effect in bankruptcy proceeding); *Rain Bird Corp. v. Milton (In re Milton)*, 355 B.R. 575, 578-82 (Bankr. N.D. Miss. 2006) (federal district court judgment for tortious interference with contract and tortious interference with business relations under Mississippi law given preclusive effect in § 523(a)(6) action); *Kforce, Inc. v. Kearse (In re Kearse)*, No. 09-0379, 2010 WL 2025518, *3 (Bankr. D. Md. May 18, 2010) (debtor's diversion of the contract opportunities of the plaintiff was willful and malicious for purposes of § 523(a)(6) because there was either an objective substantial certainty of harm or a subjective motive to cause harm); *cf. Guerra & Moore Ltd., LLP v. Cantu (In re Cantu)*, 389 Fed. Appx. 342, 347 (5th Cir. Aug. 4, 2010) (affirming bankruptcy court's conclusion, 400 B.R. 104, that Texas judgment for tortious interference with contract and with prospective contract did not establish a § 523(a)(6) willful and malicious injury); *Midway Collections, Inc. v. Graff (In re Graff)*, 475 B.R. 770, 778 (Bankr. E.D. Tex. 2012) (willfulness requirement of § 523(a)(6) was not established by a Texas judgment for tortious interference with contract); *First Weber Grp., Inc. v. Horsfall (In re Horsfall)*, 444 B.R. 578, 582 (Bankr. W.D. Wis. 2011) (Wisconsin state court judgment for tortious interference with a contract did not establish intent to injure); *Princess House, Inc. v. Kraft (In re Kraft)*, 192 B.R. 735, 739 (Bankr. W.D. Mo. 1996) (state court finding that debtor had acted intentionally and without justification or excuse in interfering with contract did not translate into a holding that the debtor acted both willfully and maliciously).

11

procurement of the contract's breach; (d) absence of any justification or privilege; and (e) damages resulting from the breach." *Maxxim Med., Inc. v. Prof'l Hosp. Supply, Inc. (In re Maxxim Med. Grp., Inc.)*, 434 B.R. 660, 687 (Bankr. M.D. Fla. 2010) (citations omitted). The tort of interference with business relationships, which includes tortious interference with customer relationships, requires an nearly analogous showing. *See Cent. States, Se. & Sw. v. Fla. Soc. of Pathologists*, 824 So.2d 935, 940 (Fla. 5th Dist. Ct. App. 2002) ("Tortious interference with a contract and tortious interference with a business relationship are basically the same cause of action. The only material difference appears to be that in one there is a contract and in the other there is only a business relationship."). Specifically, "[t]he elements of [tortious interference with business relationship] are: '(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Treco Int'l S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1289 (S.D. Fla. 2010) (quoting *Salit v. Ruden*, 742 So.2d 381, 385 (Fla. 4th Dist. Ct. App. 1999)). For both types of tortious interference, "[t]here is no such thing as a cause of action for interference which is only negligently or consequently effected." *Ethyl Corp. v. Balter*, 386 So.2d 1220, 1224 (Fla. 3d Dist. Ct. App. 1980) (citations omitted); *Fla. Power & Light Co. v. Fleitas*, 488 So.2d 148, 151 (Fla. 3d Dist. Ct. App. 1986) ("Liability for interference with contracts and prospective contractual relations developed in the field of *intentional* torts and there is as yet no general recognition of liability for negligent interference with an existing contract or with a prospective contractual relation.") (quoting Restatement (Second) of Torts § 766C cmt. a (1979)). "A cause of action for tortious interference requires a showing of both an intent to damage the business relationship and a lack of justification to take the action which caused the damage." *Networkip, LLC v. Spread Enters., Inc.*, 922 So.2d 355, 358 (Fla. 3d Dist. Ct. App. 2006) (citing *Smith v. Emery Air Freight Corp.*, 512 So.2d 229 (Fla. 3d Dist. Ct. App. 1987)).

Notwithstanding the foregoing statement that "intent to harm" is an element of the tort of interference, the Florida Supreme Court has explained that "intentional," in the context of intentional torts under Florida law, means "the actor exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury or death." *D'Amario v. Ford Motor Co.*, 806 So.2d

12

424, 438 (Fla. 2002). The court has stated that the latter, substantial-certainty standard is an objective inquiry, based on whether a reasonable man would believe that a particular result was substantially certain to follow. *Turner v. PCR, Inc.,* 754 So.2d 683, 688-89 (Fla. 2000).

When compared with the Sixth Circuit's description of willful in *Markowitz*, the Florida Supreme Court's definition of intentional appears substantially similar at first blush. *Compare In re Markowitz*, 190 F.3d at 464 ("the actor [must] desire[] to cause the consequences of his act, or believe[] that the consequences are substantially certain to result from it"), *with D'Amario v. Ford Motor Co.*, 806 So.2d at 438 ("the actor exhibits a deliberate intent to injure or engages in conduct which is substantially certain to result in injury or death"). The *Markowitz* language is derived from the definition of intent in the Restatement (Second) of Torts § 8A quoted in *Geiger*. *See McGee v. Marcum*, 184 Fed. Appx. 464, 467 (6th Cir. 2006) ("The language used in *Markowitz* tracks the Restatement (Second) of Torts definition of an intentional tort."). As to the source for Florida's definition, the Florida Supreme Court cites the same Restatement section. *See Turner v. PCR, Inc.*, 754 So. 2d at 688 ("The second part of the alternative test . . . comes from *Spivey v. Battaglia*, 258 So. 2d 815, 817 (Fla. 1972), in which this Court cited the Second Restatement of Torts [§ 8A (1965)] for the proposition that "where a reasonable man would believe that a particular result was substantially certain to follow, he will be held in the eyes of the law as though he had intended it.") (emphasis omitted).

Despite the similarities in language and source, it is questionable that the alternative test for willful under *Markowitz* is an objective standard. The language utilized by the court of appeals in *Markowitz* suggests a subjective inquiry. *See In re Markowitz*, 190 F.3d at 464 ("we now hold that unless 'the actor *desires* to cause the consequences of his act, or *believes* that the consequences are substantially certain to result from it'") (emphasis supplied). Although the Sixth Circuit has not specifically addressed whether the alternative test for willful expressed in *Markowitz* is a subjective or objective standard, both the Ninth and Tenth Circuit Courts of Appeals in discussing the case have concluded that *Markowitz* contemplates a subjective analysis. *See Carrillo v. Su (In re Su)*, 290 F.3d 1140 (9th Cir. 2002) ("The Sixth Circuit's interpretation of § 523(a)(6) exemplifies the strict subjective approach, in which a debt is nondischargeable under § 523(a)(6) only if the debtor intended to cause harm or knew that harm was a substantially certain consequence of his or her

13

behavior."); *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, 2000 WL 1275614, *2 (10th Cir. Sept. 8, 2000) (table opin.) (noting that the Sixth Circuit has followed a subjective formulation for the substantial certainty test, in contrast to the Fifth Circuit's objective notion of substantial certainty).

Whether the substantial certainty test is an objective or subjective inquiry can determine the outcome of a dischargeability determination.  For example, in a footnote in *Markowitz*, the court states "the mere fact that Markowitz should have known his decisions and actions put Carolyn Campbell at risk is also insufficient to establish a 'willful and malicious injury.' He must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior."  *In re Markowitz*, 190 F.3d at 465, n.10.  In contrast, the Florida Supreme Court has said that under its definition of intentional, "the [actor] need not have *known* that its conduct was substantially certain to cause injury; the fact that [he] *should have known* of the substantial certainty of injury would be sufficient . . . ."  *Travelers Indem. Co. v. PCR Inc*., 889 So.2d 779, 788 (Fla. 2004) (emphasis in original).

Although the foregoing discussion raises some concern as to whether a determination of "intentional" under Florida law is identical with a determination of willful under § 523(a)(6), at least with respect to the alternative substantial certainty test of willfulness, an examination of the jury instructions given in the state court case indicates that the court instructed the jury to use a wholly subjective analysis of intentional.  Specifically, with respect to IHA's claim for tortious interference with contract, the jury instructions stated:

> Interference is intentional if the person interfering knows of the contract with which he or she is interfering, and desires to interfere or knows that interference is substantially certain to occur as a result of his or her action.

Similarly, as to the claim for tortious interference with customer relationships, the jury was instructed:

> Interference is intentional if the person interfering knows of the business relationship with which he is interfering, knows he is interfering with that relationship, and desires to interfere or knows that interference is substantially certain to occur as a result of his action.

As is evident, in both sets of instructions the jury is advised that interference is intentional if the

debtor "desires" to interfere or "knows" that interference is substantially certain to result.  Thus, consistent with *Markowitz,* the jury was instructed to determine intent exclusively from Cardin's subjective prospective, rather than the objective standard of a reasonable person.

Despite this conclusion, an argument could be made that the jury instructions are nonetheless insufficient to satisfy *Markowitz* because it is not entirely clear from these instructions that "intentional" means "intent to injure" as opposed to mere "intent to act."  As quoted above, the jury was instructed that "intentional" requires a finding that Cardin knew of the contract and desired to "interfere" or knew that "interference" was substantially certain to occur.  Generally speaking, "interference" can be both an act and a result.  From a legal standpoint, however, in the context of torts of interference, "interference" is the resulting harm rather than the act that leads to the harm.  *See Grupo Televisa, S.A. v. Telemundo Comm'cns Grp., Inc.*, 485 F.3d 1233, 1242 (11th Cir. 2007) (construing Florida law) ("Persons who commit tortious interference with a contract desire, or at the very least anticipate, certain consequences such as breach."); *SW Bell Tele. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (observing that because intentional interference requires that the actor desire the consequences of his act, or believe that the consequences are substantially certain to result, the tort of interference is established only if actor desired to interfere with contract or believed that interference was substantially certain to result); Restatement (Second) of Torts § 766A cmt. e. (1979) ("The intent required [for the tort of interference with contract] is that defined in § 8A.  The interference with the other's performance of his contract is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action."); Restatement (Second) of Torts § 8A cmt. a. (1965) ("'Intent,' as it is used throughout the Restatement of Torts, has reference to the consequences of an act rather than the act itself. . . . 'Intent' is limited, wherever it is used, to the consequences of the act.").  Based on all of the foregoing, this court concludes that the standard for "intentional" as defined in the jury instructions is consistent with "willful" as interpreted by the Sixth Circuit in *Markowitz*.  In other words, because the jury was instructed that they could find Cardin liable for tortious interference with contract only if he desired to interfere with the contract with which he was interfering, or knew that interference was substantially certain to occur as a result of his actions, the jury verdict in favor of IHA on its tortious interference with contract claim establishes the willful element of § 523(a)(6).

15

Similarly, because the jury was instructed that they could find Cardin liable for tortious interference with customer relationships only if they found that he knew that he was interfering with the business relationship and desired to interfere or knew that interference was substantially certain to occur as a result of his action, the jury verdict against Cardin on IHA's tortious interference with customer relationships claim demonstrates willful as defined in *Markowitz*. *See In re Markowitz*, 190 F.3d at 464 (the debtor's conduct is willful if he "desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it").

Moreover, any ambiguity in the jury verdict[8] is alleviated by the state court's findings of facts and conclusions of law in its November 24, 2009 orders, granting declaratory and injunctive relief, and taxing fees and costs. These detailed findings leave no doubt that the state court concluded that Cardin acted with the intent to harm IHA. Specifically, in the order taxing fees and costs, the court stated that:

> (a) Defendants, while still purporting to act as distributors for IHA, planned, negotiated and agreed to become the worldwide distributor of a competing ice vending machine manufacturer; (b) before being terminated by IHA, Defendants used their positions as distributors and licensees of IHA to gain access to customers and other distributors of IHA, and tried to convert these parties to Defendants' new competing ice machine venture in violation of their obligations to IHA; (c) as part of this process, Defendants "badmouthed" IHA, IHA's products, IHA's services and IHA's officers by making false and misleading statements *that were intended to convince parties to stop doing business with IHA or reduce their amount of business with IHA*; (d) despite having ongoing and daily contact with IHA, Defendants never revealed their plans or conflicts in interest to IHA or the customers, but still continued to interact with customers, and attend dealer meetings and owner meetings put on by IHA, in order to gain access to confidential information of IHA and the customers; and (e) Defendants had also entered into contracts with customers and

---

[8] Notwithstanding the legal conclusion that interference is the consequence rather than the act, it is conceivable that the jury interpreted the jury instructions regarding interference to mean the mere acts that led to the harm rather than the harm itself. The state court record provides no clarity on this question because the jury verdict form did not instruct the jury to make a specific finding as to each element of the interference torts. Rather, the verdict simply directed the jury to state whether it found in favor of IHA or Cardin on each claim, and if it answered IHA to state the amount of damages for that claim. Nonetheless, regardless of the jury's possible misinterpretation, because the jury instructions set forth a legal definition of intentional that satisfies § 523(a)(6)'s willfulness requirement, the jury verdict in favor of IHA on the torts of interference would appear to be sufficient for collateral estoppel purposes.

assigned away subterritories without IHA's consent in violation of the Agreements, failed to live up to their obligations to customers, and also engaged in certain deceptive and misleading conduct with customers pertaining to the customers' obligations under their agreements.

(Emphasis supplied.)

In the associated November 24, 2009 order granting declaratory and injunctive relief in favor of IHA, the state court made similar findings.  In part, the order states that:

5.  Consistent with the Jury's Verdict of July 24, 2009

a.  In 2007 and 2008, Tennessee Ice and Cardin breached the Tennessee Agreements and violated their fiduciary duties to IHA;

b.  These breaches and violations arose out of a competing ice vending machine under development by Max Manufacturing, Inc. that Cardin marketed and promoted to customers and distributors of IHA, and eventually set up corporation to be the exclusive worldwide distributor of Max Manufacturing, all without informing IHA of his activities and intentions;

c.  Cardin gained access to at least one customer in Texas as their IHA dealer, without disclosing his conflict-of-interest, and then tried to sell that customer on the Max Manufacturing machine and becoming a distributor in a territory for Max Manufacturing, while speaking badly about IHA, its services, its officers and its products, still while purporting to act as an IHA distributor;

d.  Cardin also promoted the Max Manufacturing machine in private to distributors and owners of IHA ice vending machines while attending meetings for IHA dealers and owners, and again spoke badly about IHA, its services, its officers and its products while purporting to act as an IHA distributor;

. . .

f.  Cardin individually has interfered with both the customer relationships of IHA in Tennessee, and the contractual relationship between Tennessee Ice and IHA.

. . .

9.  Defendants have further acquired confidential and proprietary information of IHA and its house owners by improper means by not disclosing their conflict of interest and attending meetings and otherwise purporting to act as an IHA dealer after deciding to become the worldwide distributor for Max Manufacturing, Inc., a competitor of IHA.  Cardin has also used that confidential information to solicit and target certain large customers of IHA for Max Manufacturing.

10.  The inescapable conclusion from the evidence is that Cardin decided in late 2007 and early 2008 to switch his allegiance from IHA to Max Manufacturing but, before revealing his plans to IHA, he used his position as an IHA distributor to gain access to customers, other distributors and confidential information of IHA in order to try to further his own personal business interests with Max Manufacturing to the detriment of IHA and its relationships.

11.  After IHA terminated Defendants effective May 6, 2008, Defendants also had contacts with customers relating to their contracts with Tennessee Ice, and Defendants by actions and/or statements tried to enforce the customers' obligations under those agreements despite the fact that Defendants were no longer distributors for IHA and were no longer entitled to use or license for use IHA's trademarks as a distributor.

Based on these findings and conclusions, the state court concluded that injunctive relief against TIH and Cardin was warranted and granted, in part, the following injunctive relief:

H.  Tennessee Ice and Cardin, whether acting alone or in concert with others, are further hereby permanently enjoined and restrained, directly or in directly, as follows:

. . . .

(3) Tennessee Ice and Cardin are prohibited from inducing, encouraging, causing, soliciting and/or recruiting any current or former IHA distributor, and/or any employee or officer of any distributor, to violate any contractual duties with IHA and/or any duties of loyalty or fidelity owed to IHA; and

(4) Tennessee Ice and Cardin are prohibited from inducing, encouraging, causing, soliciting and/or recruiting any IHA customer to violate any contractual duties owed to IHA or any of its distributors; and

(5) Tennessee Ice and Cardin are prohibited from making, stating or publishing any false or misleading derogatory information concerning IHA, its products and/or its principals to third parties, including, but not limited to, telling people that IHA's Chairman of the Board is a "convicted felon"; and

(6) . . . Cardin shall not (a) make any false or misleading derogatory statements about IHA, its products, employees, officers and/or owners, (b) disclose or use any trade secrets or proprietary confidential information of IHA or its house owners, and/or (c) induce, encourage, cause, solicit or recruit any customer or current or former distributor of IHA to breach or violate any contractual duty or other duty owed to IHA.

The foregoing recitations readily demonstrate that the state court concluded that Cardin desired to cause the consequences of his acts, i.e., harm to IHA.  Accordingly, the willfulness component of § 523(a)(6) is established by the state court judgment.

18

Similarly, the malicious element of § 523(a)(6), which requires that the injury be "without just cause or excuse," *Wheeler,* 783 F.2d at 615, is met by the requirement under state law that the tort of interference be "absent any justification or privilege." *In re Maxxim Med. Grp., Inc.*, 434 B.R. at 687. As explained in the jury instructions:

> In certain situations, Cardin may be justified or privileged to interfere with a contract between Ice House America and Tennessee Ice. In those situations, the law will not hold Cardin liable for his actions even though Ice House America suffered damages as a result of Cardin's interference.

Based on all of the foregoing, this court finds that the identical issues required to apply collateral estoppel for purposes of the willful and malicious components of § 523(a)(6) are satisfied by the state court tortious interference judgments. Therefore, Cardin's motion for summary judgment regarding IHA's § 523(a)(6) claim must be denied.

## IV.

In light of the foregoing determination that collateral estoppel may be applied to render IHA's judgment against Cardin nondischargeable under § 523(a)(6), it would appear that summary judgment in favor of IHA is appropriate. Because IHA has not moved for summary judgment, in accordance with Federal Rule of Civil Procedure 56(f)(1) the court will declare its intention of granting summary judgment to IHA on this claim and provide the parties a reasonable time to respond. In this regard, there is no question that if summary judgment is granted, the jury verdict and resulting judgment order fixing the damages at $800,000 for the torts of interference would be nondischargeable under § 523(a)(6). *See, e.g.*, *Ingham Cnty. v. Strojny (In re Strojny)*, 337 B.R. 150, 156 (Bankr. W.D. Mich. 2006) ("[I]n those instances where a state court judgment has been entered, the bankruptcy court need not determine the amount of the debt. The state court judgment is entitled to *res judicata* effect regarding the *amount* of the debt.") (emphasis in original)).

With respect to the separate judgment for attorney fees and costs, as a general rule such additional judgment amounts are also nondischargeable to the extent that they arise out of or are ancillary to the nondischargeable debt. *See Kasper v. Turnage (In re Turnage)*, 460 B.R. 341, 348 (Bankr. N.D. Ga. 2011) ("Attorney fees are routinely included in the non-dischargeable debt under § 523(a)(6) when they are included in a judgment for damages due to willful and malicious injury

and are ancillary to that judgment."); *Rowe Oil, Inc. v. McCoy (In re McCoy),* 189 B.R. 129, 136 (Bankr. N.D. Ohio 1995) ("[A]ttorneys fees flowing from a nondischargeable debt are also excepted from discharge when such fees were awarded in the judgment giving rise to the nondischargeable debt."); *Assoc. Growers , Inc. v. Horowitz (In re Horowitz),* 103 B.R. 786, 791 (Bankr. N.D. Miss. 1989) (noting that fees and costs taxed against the debtor are only excepted from discharge to the extent that they arose from the nondischargeable portion of the judgment). In the present case, however, there is no indication that the awarded attorney fees arose from IHA's claims against Cardin for the torts of interference. *Cf. In re Turnage*, 460 B.R. at 348 ("Attorney's fees are recoverable in Georgia in the case of an intentional tort as an additional element of damages."). To the contrary, in awarding attorney fees of $451,550.68, the state court only cited a provision in the distributorship agreement between IHA and TIH that provided for an award of reasonable attorney fees and court costs to the prevailing party in the event of any lawsuit between the parties. Thus, the attorney fee award appears to have been based on IHA's breach of contract claim rather than on IHA's tort claims. Accordingly, the award for attorney fees would not be excepted from Cardin's discharge under § 523(a)(6).

On the other hand, the state court costs award of $52,847.23 was based not only on the cited distributorship agreement language but also Florida law which provides that "[t]he party recovering judgment shall recover all his or her legal costs and charges which shall be included in the judgment." Fla. Stat. § 57.041(1). Because the tortious interference with contract verdict was a sufficient basis, on its own, for the full amount of the state court compensatory damages award of $800,000, the entire costs award would be deemed to be ancillary to the interference torts and, therefore, also nondischargeable under § 523(a)(6).

V.

In accordance with the foregoing, the court will enter an order granting Cardin's motion for summary judgment with respect IHA's § 523(a)(2)(A) and (a)(4) claims, but denying Cardin's motion with respect to IHA's § 523(a)(6) claim. Regarding this claim, pursuant to Fed. R. Civ. P. 56(f)(1), the order will provide notice  and give the parties a reasonable time to respond to the court's declared intention to grant summary judgment to IHA on its § 523(a)(6) claim as to the

compensatory damages and costs judgments.

# # #